Good morning, Your Honors. May it please the Court, Christopher Knopf, arguing on behalf of Appellants. I'd like to reserve at least two minutes for rebuttal. Sure. Your Honor, we're here to, Appellants are here to seek reversal of a dismissal order that was issued before the taking of any discovery in this case. Your Honor, the reversal is based on the fact, number one, that we did plead a prime offense case under Title III of the ADA. The lower court did not assume the facts that we pled as true and, in fact, introduced facts beyond the complaint that were alleged by appellees in their briefing. And, in fact, the court even went on the Internet and conducted his Internet research and included that in his order. Secondly, Your Honor, the case at bar is very much distinguishable from Welch and Clegg. The distinguishing factor, Your Honor, is the fact that we've alleged that the ‑‑ there is a site at issue, there is a place of public accommodation that is closely connected with the Boy Scout troop at issue and the regional council. That place of public accommodation is Emerald Bay, and the discrimination that we allege is directly related to that place of public accommodation. Your Honors, we would also like to call your attention to page 27 of the record. It's the final e-mail from the troop to the parents, basically informing them that due to their child's disorder, he would be excluded. And that e-mail, Your Honor, on page 27, very clearly demonstrates that close link between the site, Camp Emerald Bay, and the scouts in this instance. And, Your Honor, we properly allege that both defendants, both appellees, own, operate, and or lease Emerald Bay, and that at least a week‑long trip annually is required of each scout in their troop. That's distinguishable from Welsh and Clay, Your Honor, completely new facts, completely different parties. Finally, Your Honor, PGA TOUR, which appellees completely ignore in their briefing, is binding here. It's the only case that's truly binding and really relevant, and it's very analogous to the facts that we have. PGA TOUR involved an individual disability who was already in the organization. Just like C.R., he'd been participating for years. And it wasn't until the disability became a frustration for the entity that really there was any trouble. Just like Casey Martin, Your Honor, C.R. ‑‑ C.R., excuse me. He ‑‑ oh, I'm sorry. I lost my train of thought, Your Honor. But the other point that I want to make, Your Honor, is that the private club exemption that appellees argue vociferously is an affirmative defense. And it needs to be considered after the taking of discovery. We haven't had any opportunity to do so. And the district court, in effect, misapplied the Welsh dicta. The entire public entity discussion in Welsh is dicta. It states that it's only presented, excuse me, in response to the dissent. And effectively, Your Honor, PGA TOUR vindicates that dissent. PGA TOUR essentially holds that the issue in Welsh about the place of public accommodation was actually an issue of freedom of expression. And that's the way that we would appreciate the court approach to this case, that the place of public accommodation is completely different in this instance. One thing that I do need to bring to the court's attention is that in our reply brief we did make a misstatement. We stated that the PGA TOUR stood for the proposition that PGA TOUR superseded Welsh on the private club piece. And that is ‑‑ that was a misstatement, Your Honor. We regret the error. It's not what PGA TOUR at the Supreme Court level stood for. Rather, at the district court level in PGA TOUR, that's where the issue of whether or not PGA was a private club was discussed. Let's see. Your Honor, on the private club issue, the case law demonstrates that the determination of whether these particular appellees are private clubs must be a factual inquiry. It's clearly a question of fact. Welsh applied seven factors that it took for one particular case that wasn't binding there, isn't particularly binding here. And in our amicus brief, Your Honor, we list numerous additional factors that courts across the country have looked at to determine whether a given entity is or is not a private club. And, Your Honor, I'll close my opening remarks on the legislative history to the Civil Rights Act. In our amicus brief on page 20, there's an excellent quote referring to Congress and the statement of the test as to private club, whether it, quote, really is a private club, whether, in fact, it's open to the public, is a factual one. That's in the legislative history for the Civil Rights Act. That private club exemption is equivalent in the ADA. And we feel that the lower court erred in disposing of this case prematurely. Thank you, Mr. Knopf. Thank you. Good morning. Good morning. May it please the Court. Carla Kerr for the Boy Scouts. Your Honor, the injury alleged here is associational. And that's clear from paragraphs 29 and 63, where they state that defendants are, quote, violating the ADA by refusing to allow a plaintiff to participate in the Boy Scouts with his friends. You'll recall, of course, that he was not excluded from the Boy Scouts. He was asked to start again with a new group of scouts coming into the troop, and that's what he objected to. But the issue, I mean, even assuming that the Boy Scouts are not a place of accommodation absent a connection to a physical place, many of the issues that are leading to this problem dealt with a physical place, i.e., Camp Emerald Bay, which is controlled by the Boy Scouts. So what's the problem? Your Honor, first of all, there are any number of bases on which this complaint fails to state a claim. One is that it affirmatively alleges itself into the private club exemption. It uncannily alleges everything that's required to find a private club. Second of all, there are two elements required. But you still have, I guess I'd like some elucidation of that, but. Yes, well, that's what I was just doing. There are really three grounds in our view for finding that the complaint fails to state a claim. One, that they affirmatively allege themselves into a private club exemption. Two, under the operative private club statute, you have to have denied the plaintiff the goods and services of a place of public accommodation. And the refusal to allow plaintiff to participate in the Boy Scouts with his friends is certainly not a good or service of a place of public accommodation. But Camp Emerald Bay surely is. No. No, Your Honor. Actually, that gets you to the third element, which is that a person, the defendant has to be a person who owns, operates, or leases a place of public accommodation. And apart from the legal conclusion that Emerald Bay is a place of public accommodation, the factual allegations are that it is a place for Boy Scout outings. That's in paragraph 26. The Scouts use, operate, or lease. Obviously, use is insufficient. We all use 711, and we're not responsible for that. Lease would be sufficient. Operates and lease, yes. And I'm even assuming use is a typo, and he means owns. It's for Boy Scouts outings, Your Honor. That's the allegation. And seven times that I – when I stopped counting, it's referred to as a Boy Scout trip, and it's referred to by counsel to the court below as a place where, quote, children in the Boy Scouts go in order to move up in the ranks of Boy Scouts. Close quote. That's at SCR-64. That was the assertion of counsel to the court below, Your Honor. And I submit that it's as alleged as a fact. Sotomayor, excuse me.  All right. But then you're going back to your private club allegation. But the question at this juncture is why it's not a place of public accommodation. No. I'm asserting that the factual allegation about Emerald Bay is that, in fact, it's a place of private accommodation. It's a place of Boy Scout accommodation as alleged. Okay. But I'm looking at paragraph 26. Yes. It just flatly says Emerald Bay is a place of public accommodation. No. And then contradicts itself by saying for Boy Scout outings. Use operator lease Emerald Bay for Boy Scout outings. I'm sorry. Which paragraph were you in? Oh, I see. At the very end. At the very end of 26. Use operator lease Emerald Bay for Boy Scout outings. So it's a the legal conclusion certainly is that it's a place of public accommodation, but the factual allegations are only that it's used for Boy Scout outings for Boy Scouts to move up in the ranks of Boy Scouts and for Boy Scout trips. It's affirmatively alleged to be used as a place of Boy Scout accommodation. And as I said, Your Honor, that's the third element of the operative statute, which is where the Emerald Bay issue even comes in, and I think it's out already on the second ground, which is that the failure to move forward in Boy Scouts is not a good or service of a place of public accommodation, and that's the second element. And that's before you get to the private club exemption, which I think that the plaintiffs have solidly put themselves into. You'll recall that the Welsh language is that the primary benefits of membership are interaction and companionship among the boys and the adult volunteers. The complaint alleges that the troop is a group of 75 boys who are teens and pre-teens, that's in paragraph 17 and 8, who with their families become involved in the troop. The boys become friends. That's in paragraph 15, 18, and 29. It is run by volunteer dads. That's in paragraph 22. The volunteer leaders also become friends themselves. Roberts. What is this? What's the point of what you're saying? That you have all the factors for a private club. The plaintiff honestly gave a description of the Boy Scout troop he was in and he has basically affirmatively alleged the private club exemption. In fact, he even says that it's a community-based male bonding activity. That's in paragraph 13. So our point is that you have more than enough facts to find that he has pleaded himself into the private club exemption. Let me go back to paragraph 26 again.  The last sentence says, Troop 223 and the West Los Angeles Council frequently use, operate, or lease Emerald Bay for Boy Scout outings. You made much of that. Suppose the phrase for Boy Scout outings weren't in the complaint. They just have alleged Emerald Bay as a place of public accommodation within the meaning of the ADA and that Troop 223 operates and leases it, left out for Boy Scout outings. Your Honor, in my view, Emerald Bay makes no difference whatsoever. It could say Yosemite. It could say it's a private, it's a public campground. It's KOA. The activity of being advanced in rank have no bearing on Emerald Bay or whether it was Juscepho or anything else. It's a Boy Scout activity that has no necessary connection to Emerald Bay. Read KOA. Read Yosemite. It could have been any of those places. It could have been McDonald's on a Friday afternoon. It's a group activity is what it means to say. I'm sorry. Kagan. Doesn't the case law concern itself with the question of the connection to a physical place with regard to, in other words, we have several different problems here, but one of them is whether an organization can be a place of public accommodation. And with regard to that question, the connection to a physical place seems to matter a great deal. Is that not right? Yes, Your Honor. All right. So the fact that it was not Yosemite or KOA does matter. No, Your Honor. My point is that as a Boy Scout activity, as an associational activity, as a private club activity, it's not connected to Emerald Bay. So essentially. It's happenstance and it's random that it happened at Emerald Bay. In the end, your whole argument turns on the fact that there are sufficient allegations in the complaint to establish a private club, because everything you're saying seems to tie back to that. That's correct. There are allegations sufficient to show that it's a private club. There is the fact that it fails to state a claim that there are goods and services that was a denial of a good or service of a place of public accommodation. And there, it fails to state the third element as well, that it involved a person who owns, uses, or leases a place of public accommodation, because Emerald Bay is pleaded as a place of private accommodation. But as I say, even if you don't buy that third, that third argument, Your Honor, you still have to. Kagan seems to be contrary to the statute, because the statute, with regard to the definition of public accommodation of this type, doesn't say anything about private or public. I mean, the burden seems to be borne by the private club. No. It's my point, Your Honor, that the factual allegation, apart from the legal conclusion it's a public accommodation, as described in the rest of the complaint, Emerald Bay is described as a place of Boy Scout accommodation. It's only ever described in terms of a place where the following private entities are considered public accommodations for purposes of subchapter if the operations of such entities affect commerce, and one of them is a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation. It doesn't say anything about. If open to the public. Where does it say that? Well, that's from Janky v. 20th Century Fox. I mean, the rule is you not only do you have to be listed in the statute, but you have to also be open to the public. I mean, you recall in Janky, the plaintiff sued because he was taken as a visitor into the 20th Century Fox studio, and there was a commissary and there was an ATM machine and some other facility, all of which were listed in the statute, and the public. Is Emerald Bay operated exclusively for the Boy Scouts? Is it just a Boy Scout camp? When the Boy Scouts use it, it is just a Boy Scout camp. So when the Boy Scouts are there, we don't have other groups there during that week. Right, Your Honor. But the camp itself is operated and available to other groups besides the Boy Scouts. Is that correct? It could be, Your Honor. I don't know. We don't know. Would that be relevant to know? No, Your Honor, because in my view, if they're having Boy Scout activities in Yosemite or a KOA group, it's still a Boy Scout camp. All of that's going to turn on the question of whether they're a private club. Yes, Your Honor. I mean, everything seems to be coming back to the private club exemption. Yes, Your Honor. I mean, yes, I think that's true. And as I say, as alleged, it's alleged to be a Boy Scout accommodation. The private club, the question of the private club, of course, was not, was reached, as I say, fairly superficially by the district court. And it was reached largely on the basis of Welsh. He relies on Welsh and Clegg, Your Honor. Yes. Welsh doesn't seem really to have a whole lot to do with this case. Well. It really was about exclusions on the basis of religious beliefs. Well, in fact, it had a lot more substance to it because, in fact, the plaintiff was excluded. I mean, here the plaintiff wasn't even excluded. He's just asking you to rule on the question as to whether he should be advanced in rank in Boy Scouts, which does not seem to me to be the stuff of Federal regulation, Your Honor. And if it were, you'd have hundreds of thousands involving every organization and the status that people would like to attain in those organizations. So it seems to me it has less to do than Welsh does. May I ask a result for a second? Paragraph 8 says Troop 223 offers recreational and educational opportunities to teenage and preteen boys and their families in Pacific Palisades, California, in Camp Emerald Bay located on Santa Catalina Island. Why doesn't that allege basically public use? Well, that alleges to me of private use. No, it says it's open to the public. It's not sufficient. Excuse me. It said to teenage boys and preteens in Pacific Palisades, California. Because the point is if it's not open to the public, if it offers them as a boy scout. It says it's not open to the public. In the rest of the complaint, it makes clear that these are offered to boy scouts. There's no sense that it's offered to the public. Well, that's like saying a bowling alley is open to anyone who wants to bowl, you know, or to people who join the league, you know. It's still open to the public. Well, I mean, you can offer the services of the Catholic Church to the public, but until you are baptized, you don't become a Catholic. So, I mean, offer is that's certainly not sufficient for demonstrating whether it's public or private. And everything that he alleges in terms of the facts is that he's talking about a rank within boy scouts which is alleged to be private. But that's not so. He's also alleging that there was he was not allowed to do certain things in the boy scouts, like go to this, these camping places on special circumstances. It was never the case that he wasn't allowed. He was asked to bring his father. And his father had, in fact, come to all the prior meetings. And it was only this event, which was a seven-day overnight campout where other parents were required to supervise all these kids, that they the father was unable to attend and neither attended. That's what happened. The father had previously attended. Everyone had understood up to that because every event had been attended by somebody. And if I had started talking before I finished talking, you would have heard my caveat, which is on special circumstances, special conditions. The special condition being that he bring his father. Nobody else had to bring their father, right? So it was a special condition for him. It may have been a reasonable one. It may have been a good one, but it was not what was applied to everybody else. That's what's alleged, Your Honor. Okay. Yes. Okay. Thank you very much, Ms. Kerr. Mr. Knauf, I think you had a few minutes left. Can we add a zero to the end of that, Your Honor? Pardon me? I need 20 minutes to respond to everything that was said. You've got 40. Your Honor, a couple of things. A vermint that he was not excluded is ridiculous, Your Honor. As Judge Verzon noted, he was excluded. They wouldn't allow him to participate unless he had someone with him. In fact, perhaps he was. Ms. Knauf, as you said, is not an exception. She's not a private member of the private club. That's her allegation, Your Honor, and as I said at the outset of this case, she's not an exception. She's saying it's your allegation that you've alleged it. Absolutely not, Your Honor. Absolutely not. We've alleged that the Scouts are open to every foreigner. Where did you allege that? I'm sorry? Where did you allege that? Oh, let's see. That's a toughie. Your Honor, I can't pull it out of this record. To teenage and preteen boys and the families in that location, Your Honor. I thought I saw something, and I thought it was in the complaint that I just looked for, and I couldn't find it, so I must be thinking of something that I saw in the record that said that there was basically an open invitation to all the kids at Marquez Elementary School, that if you come to the meeting, then you get to be a Boy Scout or a Tiger. That's exactly how this troop advertises, Your Honor. Is that in the complaint, though? In terms of the Marquez Elementary, I honestly can't recall, but my recollection is that in the complaint there are allegations about how the Boy Scouts are open to all boys of a certain age within a geographic area. That's the only limitation. And therefore, you know, the private club exemption, as we said, is a question of fact. We contend it's absolutely not a private club. It's part of the fabric of the society that boys, you know, are part of the Boy Scouts. And in this instance, Your Honor, you know, that's their allegation. We're here after a motion to dismiss before any discovery. There are numerous factors to consider. Your Honor, the PGA tour really, really applies to the issue of the camp is only limited to Boy Scout outings. PGA tour, the services are privileges and advantages to compete, to contest with elite athletes. And it's all on a private level, on private golf courses that may not otherwise be open to the public. But Justice Stevens in the PGA tour said, you know, PGA is open to anyone who qualifies, same as the Boy Scouts. They use Camp Emerald Bay as a ---- I thought you agreed before that PGA tour doesn't actually decide any private club case. I'm sorry? I thought you agreed earlier that the PGA tour case does not actually decide any private club issue. At the district court level, it did. The district court ruled that it's not a private club. That issue was not raised on appeal. Okay. And what I'm alleging is that PGA tour is very elite. You have to pay $3,000. You have to have letters of preference. You have to compete at an elite level in golf in order to get into the organization. It's very much could have been deemed a private club, but it was not because the exemption of private club is very limited. The congressional history arm is very clear on that. It's a very limited exemption. You look at a variety of factors to determine that factual question. Counsel is arguing a lot of facts to you, Your Honor, a lot of facts that are not in the record. You know, we look at, let's see, advancement. Advancement is a privilege or advantage once you're in this troop. That's what you're doing. You're performing activities. You're recreating. You're going to the camp. The complaint states that going to the camp is required. It's part and parcel to their program. So to say that, you know, it's incidental like Disneyland, it's absolutely untrue. Does the complaint also allege that he had an older person who could go with him and it wasn't his father? Yes. The complaint alleges that his brother, who was an Eagle Scout from the same troop, was ready, willing, and able to attend with him in place of his father. And the troop told them, no, there's no room for you. I'm not sure if it's in the complaint. I think that it is. But it was found out later that, in fact, there was room. And they simply excluded him because they didn't want him there. Your Honor, I'll just conclude basically to kind of reiterate the fact that the ADA really was created to address these exact types of situations. We have a compelling need for a clear and comprehensive national mandate. That's what Congress said. We need to include people with disabilities in the community, in recreation, in Scouts. Thank you very much, Mr. Knapp. Thank you, Your Honor. Mr. Knapp, thank you. Case RU to submit it. Next case is 0656670, Johnson v. GMAC.
judges: Silverman, Berzon, Bybee